UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT LOWINGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STEWART INFORMATION SERVICES CORPORATION, THOMAS G. APEL, ARNAUD AJDLER, CLIFFORD ALLEN BRADLEY, JR., JAMES CHADWICK, ROBERT L. CLARKE, GLENN C. CHRISTENSON, FREDERICK H. EPPINGER, MATTHEW W. MORRIS, CLIFFORD PRESS, FIDELITY NATIONAL FINANCIAL, INC., A HOLDCO CORP., and S HOLDCO LLC,<br><br>Defendants. | Civil Action No. 4:18-cv-2203<br><br>JURY TRIAL DEMAND |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, inter alia, the investigation of counsel as to all other allegations herein, as follows::

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on March 19, 2018 (the "Proposed Transaction"), pursuant to which Stewart Information Services Corporation ("Stewart" or the "Company") will be acquired by Fidelity National Financial, Inc. ("Parent") and its wholly owned subsidiaries, A Holdco Corp. ("Merger Sub I") and S Holdco LLC ("Merger Sub II," and together with Parent and Merger Sub I, "FNF").

2. On March 18, 2018, Stewart's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with FNF. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Stewart's shareholders and completed, each share of Stewart common stock will be converted into, at the election of the holder of such share, subject to proration and adjustment, either (i) $50.00 in cash; (ii) 1.2850 shares of Parent common stock; or (iii) $25.00 in cash and 0.6425 shares of Parent common stock. Holders of Stewart common stock who do not make an election will receive the mixed cash and stock consideration.

3. On May 30, 2018, Defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Stewart common stock.

9.      Defendant Stewart is a Delaware corporation and maintains its principal executive offices at 1980 Post Oak Blvd., Houston, Texas, 77056. Stewart's common stock is traded on the NYSE under the ticker symbol "STC." Stewart is a party to the Merger Agreement.

10.     Defendant Thomas G. Apel ("Apel") is the Chairman of the Board of Stewart.

11.     Defendant Arnuad Ajdler ("Ajdler") is a director of Stewart.

12.     Defendant Clifford Allen Bradley Jr. ("Bradley") is a director of Stewart.

13.     Defendant James Chadwick ("Chadwick") is a director of Stewart.

14.     Defendant Robert L. Clarke ("Clarke") is a director of Stewart.

15.     Defendant Glenn C. Christenson ("Christenson") is a director of Stewart.

16.     Defendant Fredrick H. Eppinger ("Eppinger") is a director of Stewart.

17.     Defendant Matthew W. Morris ("Morris") is a director and the Chief Executive Officer ("CEO") of Stewart.

18.     Defendant Clifford Press ("Press") is a director of Stewart.

19.     Defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants.

20.     Defendant Parent is a Delaware corporation. Parent's common stock is traded on the NYSE under the ticker symbol "FNF." Parent is a party to the Merger Agreement..

21.     Defendant Merger Sub I is a Delaware corporation and a wholly owned subsidiary of Parent. Merger Sub I is a party to the Merger Agreement.

22. Defendant Merger Sub II is a Delaware corporation and a wholly owned subsidiary of Parent. Merger Sub II is a party to the Merger Agreement.

**CLASS ACTION ALLEGATIONS**

23. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Stewart (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of March 15, 2018, there were approximately 23,728,907 shares of Stewart common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants violated the 1934 Act; and (ii) whether Defendants will irreparably harm Plaintiff and the other members of the Class if Defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the

adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

30. Stewart is a global real estate services company offering products and services through its direct operations, network of Stewart Trusted Providers and family of companies. From residential and commercial title insurance and closing and settlement services to specialized offerings for the mortgage industry, Stewart offers the comprehensive service, deep expertise, and solutions its customers need for any real estate transaction.

31. Stewart's international division delivers products and services protecting and promoting private land ownership worldwide. Currently, Stewart's primary international operations are in Canada, the United Kingdom, Australia, and Central Europe.

32. Stewart currently reports its business in two segments: the title insurance and related services segment and the ancillary services and corporate segment.

33. On March 18, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with FNF. If the Proposed Transaction is approved by Stewart's shareholders and completed, Merger Sub I will merge with and into Stewart, with Stewart surviving the merger as a direct wholly owned subsidiary of Parent. Immediately thereafter, Stewart will merge with and into Merger Sub II, with Merger Sub II surviving the second merger as a direct wholly owned subsidiary of Parent.

34. Pursuant to the terms of the Merger Agreement, each share of Stewart common stock will be converted into, at the election of the holder of such share, subject to proration and adjustment, either (i) $50.00 in cash (the "cash election consideration"); (ii) 1.2850 shares of Parent common stock (the "stock election consideration"); or (iii) $25.00 in cash and 0.6425 shares of Parent common stock (the "mixed election consideration"). Holders of Stewart common stock who do not make an election will receive the mixed election consideration.

35. Under the Merger Agreement, if the combined company is required to divest assets or businesses with 2017 annual revenues in excess of $75 million in order to receive required regulatory approvals (up to a cap of $225 million of 2017 annual revenues), the merger consideration will be adjusted downwards on a sliding scale between such amounts of divestitures up to a maximum reduction of $4.50 in value in the event that businesses or assets with 2017 annual revenues of $225 million are divested, with such downward adjustment to be made in cash, Parent common stock, or both, depending on whether the cash election consideration, the stock election consideration, or the mixed election consideration, respectively, is elected and received.

36. According to the press release announcing the Proposed Transaction:

> Stewart Information Services Corporation (NYSE: STC) ("Stewart") today announced that it has entered into a definitive agreement to be acquired by Fidelity National Financial, Inc. (NYSE: FNF) ("Fidelity"), a leading provider of title insurance and transaction services to the real estate and mortgage industries.
>
> Under the terms of the agreement which has been unanimously approved by Stewart's Board of Directors following a comprehensive review of strategic alternatives, Stewart shareholders will receive $25.00 in cash and 0.6425 common shares of Fidelity for each share of Stewart common stock they hold at closing, subject to the adjustment and election mechanisms described below. . . .

6

Based on Fidelity's closing stock price on March 16, 2018, the merger consideration represents total value per Stewart share of $50.20, a 23% premium to Stewart's closing stock price on March 16, 2018 and a 32% premium to Stewart's closing stock price on November 3, 2017, the trading day prior to Stewart's announcement that it would undertake a review of strategic alternatives.

Under the terms of the definitive agreement, the following mechanics apply to the merger consideration:

• Adjustment mechanism. If the combined company is required to divest assets or businesses exceeding $75 million in order to procure required regulatory approvals up to a cap of $225 million of divested revenues, the purchase price will be adjusted down from $50.20 (based on $25.00 in cash and 0.6425 common shares of Fidelity stock) on a pro-rata basis relative to the actual amount of revenues required to be divested between $75 and $225 million to a minimum purchase price of $45.50 per share of common stock (with the decrease split on a 50/50 basis between the cash and stock portions of the merger consideration based on the value of the stock component at signing).

• Election mechanism. As an alternative to the default mixed transaction consideration described above, each Stewart shareholder will have the ability to instead receive either $50.00 in cash or 1.285 common shares of Fidelity for each Stewart share held, subject to a customary pro ration mechanism to the extent that either the cash or the stock portion of the merger consideration is over-subscribed.

The proposed transaction is subject to approval by Stewart's shareholders and regulatory authorities and the satisfaction of customary closing conditions. The company will be closely working with regulators to obtain the necessary approvals as soon as possible, and the transaction is expected to close by the first or second quarter of 2019. If the deal is not completed for failure to obtain the required regulatory approvals, Fidelity is required to pay a reverse break-up fee of $50 million to Stewart.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

37. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

38. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

7

39. The Registration Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Citigroup Global Markets Inc. ("Citi").

40. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

41. Defendants failed to disclose Stewart's projected 2022 net income, despite the fact that Citi relied on that financial projection in its Dividend Discount Analysis. The failure to disclose this information was material because it was used by Citi to calculate the Company's terminal value, which is a critical component of the Dividend Discount Analysis. Without this information, the Registration Statement is misleading because Defendants are attempting to mislead stockholders into believing that the merger consideration is fair.

42. Further, the Registration Statement discloses Stewart's projections of "Estimated Stewart Distributable Cash," which is a non-GAAP (generally accepted accounting principles) financial measure, but the Registration Statement fails to provide stockholders with the necessary line item projections for the metrics used to calculate the non-GAAP measure or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

43. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a

reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, Defendants acknowledge in the Registration Statement that "[n]on-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by Stewart may not be comparable to similarly titled amounts used by other companies." This information was particularly important here because these Estimated Stewart Distributable Cash projections were a key input in Citi's Dividend Discount Analysis. As such, stockholders are entitled to the line item projections used to calculate Stewart's non-GAAP Estimated Stewart Distributable Cash projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

44. With respect to Citi's Selected Public Companies Analysis, the Registration Statement fails to disclose: (i) the individual multiples and financial benchmarking metrics for each of the companies observed by Citi in its analysis; and (ii) Stewart's corresponding 2018 and 2019 price-to-earnings per share ("P/EPS") multiples. Specifically, the Registration Statement indicates that Citi reviewed P/EPS multiples of three companies for 2018 and 2019, but it only provides stockholders with the P/EPS multiples of two of the selected companies. The failure to disclose each of the selected companies' multiples, as well as Stewart's corresponding multiples, causes the Registration Statement to be misleading, as stockholders cannot observe whether the selected companies truly are comparable to the Company, or whether the companies were selected to make the merger consideration appear fair.

45. With respect to Citi's Dividend Discount Analysis, the Registration Statement fails to disclose: (i) the Company's projected 2022 net income that was used by Citi to determine

the Company's terminal value in Citi's analysis; (ii) the line item projections of Stewart's "Estimated Stewart Distributable Cash;" (iii) Citi's basis for selecting terminal P/EPS multiples based on Stewart's historical trading range, rather than the multiples derived from comparable companies, as is typical; (iv) the perpetuity growth rates implied by Citi's analysis; and (v) the specific inputs and assumptions underlying the discount rates of 8.6% to 10.1% calculated and applied by Citi.

46. The failure to disclose the foregoing information renders the Registration Statement misleading, as Citi used several improper inputs and methodologies to perform its Dividend Discount Analysis. This information is material because Defendants have relied upon Citi's fairness opinion to approve the Proposed Transaction and have touted it to stockholders and encouraged them to vote in favor of the Proposed Transaction. If the omitted information is disclosed, stockholders could observe the fallacy of Citi's valuation analyses, which could cause stockholders to vote against the Proposed Transaction.

47. Further, the Registration Statement fails to disclose whether Citi performed a precedent transactions analysis or any valuation analyses of Parent in connection with its evaluation of the Proposed Transaction. If it did, Defendants must disclose a fair summary of the analyses. If it did not, Defendants must provide stockholders with Citi's basis for failing to do so in light of the fact that the precedent transactions analysis is one of the three most common methodologies used in valuing target companies in mergers and acquisitions, and bankers typically perform valuation analyses of the acquiring company when stock is offered as part of the merger consideration. The Registration Statement is misleading without this material information.

48. The Registration Statement fails to disclose the amount of synergies and cost savings that are expected to result from the Proposed Transaction, and whether these synergies and cost savings were accounted for in Citi's analyses. Indeed, according to the Registration Statement, representatives of FNF and Stewart discussed "certain potential synergies that might result from a proposed strategic transaction involving Stewart and FNF" during the sales process. This information is important because forecasted cost savings and synergies achieved as a result of a merger represent tangible value to the acquirer in the form of future cash flow and earnings above and beyond what can be achieved by the target on a stand-alone basis. Thus, the acquirer can (and should) pay a higher price as a result of the existence of cost savings and synergies. Accordingly, stockholders are entitled to understand the extent of those synergies to determine whether they were properly accounted for in the merger consideration.

49. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Opinion of Citi; and (ii) Unaudited Prospective Financial Information.

50. The Registration Statement omits material information relating to the background leading to the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

51. The Registration Statement indicates that, throughout the sales process, Stewart entered into confidentiality agreements with various interested parties, including Parties B through F, but Defendants failed to disclose the terms of those confidentiality agreements, including whether they contain standstill and/or "don't ask, don't waive" provisions that prevent the counterparties from acquiring the Company's stock or requesting a waiver of the standstill

11

provision. If the confidentiality agreements do contain standstill and "don't ask, don't waive" provisions, the Registration Statement is misleading in that it leads stockholders to believe that the interested parties are free to submit a superior offer to acquire Stewart. Stockholders would find this information material in deciding whether the Proposed Transaction with FNF is the best transaction that the Board could have obtained.

52. The Registration Statement indicates that Stewart offered to acquire another third party, Party A, but it fails to disclose the terms of its acquisition offer. This is important information for Stewart's stockholders to consider in determining whether to approve the sale of the Company. The Company's acquisition offer for Party A was seriously considered by the Board, and two members of the Board expressed dissatisfaction with Stewart's management's downward adjustments of Party A's projections. Without the full disclosure of this information, Stewart's stockholders are being misled and cannot make a fully informed decision on the Proposed Transaction.

53. The Registration Statement fails to disclose "the likelihood of Starboard voting in favor of a transaction between Stewart and Party C on the terms proposed by Party C" when Apel and Press (Starboard's designee to the Board) met with Party C between January 30, 2018, and February 12, 2018. This information is material to stockholders in determining whether Party C was encouraged or discouraged to provide a revised offer to acquire Stewart.

54. The omission of the above-referenced material information renders the Background of the Mergers section of the Registration Statement false and misleading.

55. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Stewart

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Stewart is liable as the issuer of these statements.

58. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

59. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

60. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

61. The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

62. By reason of the foregoing, Defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

63. Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and FNF

64. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65. The Individual Defendants and FNF acted as controlling persons of Stewart within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Stewart and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

66. Each of the Individual Defendants and FNF was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

67. In particular, each Individual Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

68. FNF also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

69. By virtue of the foregoing, the Individual Defendants and FNF violated Section 20(a) of the 1934 Act.

70. As set forth above, the Individual Defendants and FNF had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event that Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

DATED:  June 28, 2018.

                Respectfully submitted,

                *Thomas E. Bilek*
                Thomas E. Bilek
                TX Bar No. 02313525 / SDTX Bar No. 9338
                **THE BILEK LAW FIRM, L.L.P.**
                700 Louisiana, Suite 3950
                Houston, TX  77002
                (713) 227-7720

                *Attorneys for Plaintiff*

**OF COUNSEL:**

Aaron Brody
**STULL, STULL, & BRODY**
6 East 45th Street
New York, NY  10017
Telephone: (212) 687-7230
Facsimile: (212) 490-2022
Email: abrody@ssbny.com